**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

TEVIN CAGLE & GERALD ROBINSON     CIVIL ACTION NO. 3:24-cv-00154 (JCH)
     Plaintiffs

    v.

DURO-HILEX POLY, LLC           March 28, 2025
     Defendant

## AMENDED COMPLAINT

PARTIES:

1.      The Plaintiffs in this matter, Tevin Cagle ("Plaintiff Cagle") and Gerald Robinson ("Plaintiff Robinson"), were at all times relevant to this Action residents of the Towns of Meriden and Waterbury, State of Connecticut, respectively.

2.      The Defendant, Duro-Hilex Poly, LLC ("Defendant") is a corporation organized under the laws of the State of Delaware, with a business address of 1200 Northrop Road, Meriden, CT 06450.

JURISDICTION

3.      This Court has federal-question jurisdiction under 28 U.S.C. § 1332.

4.      Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in the District of Connecticut.

FACTS:

5.      Plaintiffs filed a timely administrative complaint against Defendants with the Connecticut Commission on Human Rights and Opportunities, and thereafter each received a release of jurisdiction letter therefrom, copies of which are appended hereto as Exhibit 1 and Exhibit 2.  This Action is brought within 90 days of receipt of said release of jurisdiction letters. As such, Plaintiffs have exhausted all administrative remedies, and this Action is timely.

1

6.     Plaintiff Cagle was hired by Defendant in or about September 2021.  Plaintiff's initial position was a packer, and he was subsequently promoted to machine operator in or around November 2021.

7.     Plaintiff Robinson was hired by Defendant on or about November 15, 2021. Plaintiff's initial position was packer, and he was subsequently promoted to machine operator.

8.     Both Plaintiff Cagle and Plaintiff Robinson are black/African American.

9.     Plaintiff Cagle is of Jamaican heritage and has extremely impaired vision.

10.     At the time that Plaintiff Cagle was hired he was the only black/African American employee in the facility.

11.     At the time that Plaintiff Robinson was hired he was one of only two black/African American employees in the facility.  The other black/African-American employee was Plaintiff Cagle.

12.     Defendant had a small number of white or Caucasian employees.

13.     The majority of Defendant employees were of Indian national origin and/or heritage and spoke Gujarati or Hindi and/or other languages prevalent in India or were Hispanic.

14.     During the time that Plaintiffs Cagle and Robinson were employed by Defendant, Kalpeshnumar Patel, was the Shift Lead on the Third Shift on which Plaintiffs worked.  He went by the nickname "Kalpesh." (Hereinafter "Kalpesh").  Kalpesh was of Indian heritage and/or national origin and spoke Gujarati or Hindi, as well as English.

15.     In or around July 2022, Defendant hired David Signore (hereinafter "Signore"), who is Caucasian, as the Third Shift/Night Shift Supervisor.

16.    During the time that Plaintiffs Cagle and Robinson were employed by Defendant, Richard Bolognese (hereinafter "Bolognese,") was the Production Manager of the Meriden facility and was above Signore in the chain of command.  Bolognese was Caucasian.

17.    During the time that Plaintiffs Cagle and Robinson were employed by Defendant, Raviendre Kailan (hereinafter "Kailan"), who commonly went by the nickname "Ravi," was the Plant Manager.  Kailan was above Bolognese in the chain of command and was the highest-ranking employee on site at the Meriden facility during the time that he was plant manager.

18.    During the time that Plaintiffs Cagle and Robinson were employed by Defendant, Christine Korzenko, hereinafter "Korzenko," was the Defendant's Human Resources representative.

19.    Plaintiffs Cagle and Robinson were hired to work third shift. Plaintiffs were the only two black/African American employees for most of the time in which they were employed. The majority of the other employees were Indian or Hispanic.

20.    Upon information and belief, the few other black/African American employees that were employed by Defendant during Plaintiffs' employment with Defendant quit due to incidents of discrimination that they had suffered.

21.    Plaintiff Cagle disclosed his visual impairment to Defendant during his interview, and at the time of his hire to both Christine Korzenko and Richard Bolonaise. Plaintiff also reminded his managers and supervisors of his visual impairment at various times throughout his employment.

22.    Approximately two weeks after his hire, Plaintiff Robinson was promoted from packer to machine operator.   At the time of his promotion, Plaintiff Robinson was informed that he would receive a raise to $18.00/hr for his first two months as a machine operator, while he was

in training, and that upon completion of his training, Plaintiff's Robinson's wages would increase to $19.75/hr.    However, upon completion of his training, Plaintiff's Robinson's ages were never increased.    Upon information and belief, Respondent's other machine operator employees who were not black/African-American were paid at the higher rate of $19.75/hr.

23.    Throughout the course of their employment with the Defendant, Plaintiffs Cagle and Robinson were subjected to harassment, racist behaviors and comments, and a hostile work environment from their Indian and/or Gujarati or Hindi speaking co-workers and supervisors on account of their race, or color.    Plaintiffs complained to supervisors, Human Resources representatives and management on multiple occasions and none of their complaints were addressed.

24.    Throughout the course of employment, Defendant's Indian and/or Gujarati or Hindi speaking workers engaged in staring at Plaintiffs Cagle and Robinson, and repeatedly refused to train them despite having been instructed by supervisors and management to do so.    Additionally, Defendant's Indian and/or Gujarati or Hindi speaking workers repeatedly and routinely refused to speak English, despite being able to speak English, when speaking to or in the presence of Plaintiffs Cagle and/or Robinson.

25.    By way of example, Plaintiff Cagle was supposed to be trained by Narendra Patel (hereinafter "Narendra"), who was able to speak both Gujarati or Hindi and English.    However, for the first several months of Plaintiff Cagle's employment, Narendra refused to speak English when "training" Plaintiff Cagle and would instead only speak Gujarati or Hindi and use hand gestures to communicate, despite knowing that Plaintiff Cagle did not speak Gujarati or Hindi. Narendra's refusal to speak English was so persistent and pervasive that Plaintiff Cagle was

unaware that Narendra spoke English until approximately the beginning of February 2022 when he overheard Narendra speak to their supervisor, Richard Bolognese, in English.

26.    Cagle also experienced difficulty with training provided by Kalpesh, in that despite his knowledge of Plaintiff Cagle's severe visual limitations, Kalpesh refused to slow down his repairs or demonstrations on the machines to a pace that Plaintiff Cagle could follow.   Although Plaintiff Cagle complained about this multiple times to Kailan, Kalpesh would simply move Plaintiff Cagle out of the way and perform repairs himself, or continue to demonstrate quickly, rather than slowing down to a pace that Plaintiff Cagle could follow.

27.    Plaintiffs Cagle and Robinson both jointly complained to Bolognese regarding the treatment of Cagle by Narendra, and regarding the general refusal of Defendant's Gujarati or Hindi-speaking workers to speak English when speaking with or in the presence of Plaintiffs Cagle and Robinson.

28.    In or about February 2022, after Plaintiffs Cagle and Robinson had made multiple complaints regarding the racist and inappropriate treatment by their co-workers, Defendant called a meeting of all machine operators on the first and third shifts. In attendance at that meeting were Kailan, Bolognese and Korzenko.   During that meeting, Kailan, Bolognese, and Korzenko discussed the need to "change the culture" in the facility, and that management was trying to "break the pattern" of the manner in which employees had worked in the past. However, the specific instances of racist conduct, including but not limited to the refusal to speak English with co-workers who did not speak Gujarati or Hindi, was not specifically addressed or admonished.

29.    During that same meeting, the machine operators were informed that work shifts would be reduced from 12 hours to 8 hours per day for all machinists, and that the such reduction in hours would be phased in on a machine-by-machine basis.

5

30.     Following the meeting, Bolognese and Kailan asked Plaintiffs Cagle and Robinson to stay after the meeting.  During this discussion Bolognese and Kailan stated that they understood the concerns that had been raised by both Plaintiffs and acknowledged the problems with the "culture" of the work environment and asked them to "have patience" with their efforts, stating "the culture was going to change."

31.     However, instead of working to change the culture, Defendant targeted Plaintiffs Cagle and Robinson for retaliation.

32.     Plaintiff Cagle's shift was the first to be reduced from 12 hours to 8 hours, followed shortly thereafter by Plaintiff Robinson's shift. However, none of the other machinists on the third shift had their hours reduced and to the present continued to work 12-hour shifts while Plaintiff's Cagle and Robinson, the only black/African American employees and the only disabled employee continued to work only an 8-hour shift, resulting in reduced wages.

33.     In or about April 2022, Plaintiff Cagle requested from Bolognese a new person to train him because Narendra was generally refusing to speak English and was refusing to teach him properly. In particular, Narendra knew that Complaint did not speak English but refused to speak English when instructing plaintiff.  Additionally, Narendra's main method of communication was hand gestures and physically demonstrating to Plaintiff how to perform tasks and activities on the machine.  However, Narendra refused to stop or slow the machine in order to allow Plaintiff Cagle to more easily see and follow her demonstration, despite knowing that Plaintiff Cagle has extremely poor vision.

34.     In or about April 2022, Plaintiff Robinson experienced an instance of extreme harassment by Kalpesh.  Kalpesh is approximately 6 ft 4 in. tall.  During the incident, Kalpesh towered over Plaintiff Robinson, invaded his personal space, poked him in the chest and yelled at

6

him in Gujarati or Hindi. During the incident, Kalpesh made hand gestures indicating, "You're stupid." Plaintiff Robinson became frustrated with Kalpesh's treatment, and warned Kalpesh against poking him, and then went to the break room to calm down.

35.    Kailan became aware of the incident and sent Plaintiff Robinson home for the rest of the day.

36.    The following day, Plaintiffs Cagle and Robinson discussed the incident with Bolognese.  Bolognese did not take any action against Kalpesh, and instead dismissed both Plaintiffs' complaints regarding the harassment and told Plaintiffs Cagle and Robinson that they needed to "relax."

37.    The discussion above was overhead by Plaintiffs' Indian and/or Gujarati or Hindi-speaking co-worker, who goes by the nickname "J".  Neither Plaintiff knows "J's" full name. "J" stated to Plaintiff Robinson in the presence of Bolognese, "You gotta calm down.  You're an angry black man." Bolognese did not take any corrective action against "J" for this comment or behavior.

38.    Following this incident, multiple Indian and/or Gujarati or Hindi-speaking employees began routinely referring to Plaintiffs Cagle and Robinson as "angry black men."

39.    In or about May 2022, Plaintiff Cagle had a problem with his machine and "J" was talking to him in a distracting manner while Plaintiff Cagle was trying to figure out the problem. Plaintiff Cagle responded to "J" by stating, "Give me a minute," to which "J" again called him an "angry black man."

40.    Additionally, Plaintiffs Cagle and Robinson came to believe that the machines that they were working on were being sabotaged by the packers with whom they were working, where machines of operators of Indian heritage and/or Gujarati or Hindi-speaking employees were not

sabotaged.  Plaintiffs Cagle and Robinson both complained to supervisors regarding this conduct but no action was taken.

41.    Plaintiff Robinson was terminated from employment with Defendant on or about August 3, 2022.

42.    In or around July 2022, Plaintiff Cagle was issued a "final warning," which Defendant claimed was regarding attendance.

43.    In or about July 2022, Defendant hired Signore.  Shortly thereafter, Plaintiff Cagle tried to address the racist conduct of his co-workers, including inadequate training and sabotaging of machine with Bolognese, Kailan and Signore.  Plaintiff again explained his frustration with the refusal of co-workers to speak English when addressing him or training him, and with the lack of response received from his Indian and/or Gujarati or Hindi-speaking Shift Lead or Machine Adjustor with tasks that Plaintiff was not qualified or permitted to perform as a machine operator.

44.    Signore was generally dismissive of Plaintiff Cagle's concerns, and instead stated that he expected Plaintiff Cagle to "take more initiative."

45.    Plaintiff Cagle raised his concerns regarding lack of training and inadequate training with Kailan, Bolognese, Signore, Korzenko and two female representatives at the corporate Human Recourses level (whose names are unrecalled), all without remedy.

46.    In or about August 2022, Defendant held a Safety Meeting for machinists which was presented by Ahmad Mamazi Fard, Defendant's Safety Coordinator.  The meeting was not mandatory.  The meeting was comprised of a safety video, which was followed by a quiz.

47.    Immediately following the conclusion of the video, a white co-worker, Scott, immediately left the meeting without staying for the quiz.

48.    During the quiz portion of the meeting, Fard began yelling at Plaintiff Cagle when Plaintiff Cagle challenged one of Fard's responses regarding the quiz. Plaintiff Cagle was unwilling to accept Fard's abusive conduct so he left the meeting prior to conclusion of the quiz.

49.    Following the meeting, Korzenko called Plaintiff Cagle and threatened him with suspension for a week for having left the meeting. Cagle informed Korzenko that he was already on a pre-planned vacation, and also brought her attention to the fact that a white co-worker had also left the meeting but was not being disciplined. Defendant ultimately did not discipline Plaintiff Cagle for this incident.

50.    The following week, Plaintiff Cagle discussed with both Kailan and Signore the ongoing racial problems, and in particular noting the Defendant's efforts or threats to suspend Cagle when they had taken no action against the white employee, Scott, who had also left the meeting. Kailan dismissed Plaintiff Cagle's concerns, and erroneously claimed that he had never had a racial complaint before - despite the multiple prior complaints of Plaintiffs Cagle and Robinson – and stated, "What do you expect me to do?"

51.    On or about August 5, 2022, after Plaintiff Robinson's termination both Plaintiffs Cagle and Robinson contacted the corporate human resources department, speaking with HR Representative Sharon Bowen, to complain about multiple issues, including racial tension in the workplace.  Robinson also complained about her termination for alleged attendance violations, and the fact that he took care of his step-mother and occasionally had to take her to or pick her up from the hospital, and that he had complied with call out procedures.  Plaintiff Robinson expressed to Bowen that he believed his termination was in retaliation for his previous complaints to his supervisors. Although members of the corporate human resources department, investigated various

aspects of Plaintiffs complaints, they did not conduct a thorough investigation into Plaintiffs complaints of racial tension and retaliation.

52.    In or about October 2022, an incident occurred where a co-worker falsely made a complaint regarding Plaintiff Cagle, asserting that Plaintiff Cagle had not cleaned his machine. However, Plaintiff Cagle had not actually worked on the shift where the alleged failure to clean had occurred.  Nonetheless, Signore singled Plaintiff Cagle out for verbal coaching or reprimand, despite the fact that Plaintiff Cagle had not worked the shift at issue, and therefore, could not have been responsible for the alleged failure to clean the machine.  Once Plaintiff Cagle explained to Signore that he had not worked the shift at issue, in light of the ongoing racial harassment and sabotage by his co-workers, Plaintiff Cagle asked Signore what he was going to do to address the fact that a false accusation had been made against him.  Signore responded stating in substance or effect, "Why does it fucking matter?" and swore at Plaintiff Cagle.

53.    Following this incident, on or about October 27, 2022, Plaintiff Cagle sent an email to Bolognese requesting a meeting with him and Kailan and Korzenko discuss the incident, as well as ongoing harassment and racism that had not been addressed, as well as to discuss issues surrounding Plaintiff Cagle's attendance and a newly implemental points system within the facility.  However, Plaintiff Cagle subsequently tested positive for Covid-19 and was sent home from work.

54.    On or about November 2, 2022, Plaintiff Cagle again emailed Bolognese to follow up on his request for a meeting with Bolognese, Kailan and Korzenko to discuss his supervisor's behavior and actions toward him.

55.    In or about late November 2022, Plaintiff Cagle was unable to attend a safety meeting that occurred on his shift.  When Plaintiff asked for a make-up day for the training, he

was informed by Bolognese that there was no make-up day, and that he would have to attend the meeting when it was presented to one of the other shifts.

56.    On or about December 1, 2022, Plaintiff emailed Korzenko to request a copy of his assigned job duties and tasks, and to also request, again that disparate treatment be addressed. Specifically, Plaintiff Cagle informed Korzenko that he felt that he was being "targeted" and that if his supervisors expected him to behave "by the book," that his co-workers should similarly be required to so behave, and that his complaints regarding his co-worker's refusal to engage with him and to speak English in his presence had gone unaddressed.

57.    Defendant's employee handbook contains a policy entitled, "Open Door Policy," which encourages employees to share concerns, and seek to resolve problems or issues with their immediate management.  The same policy also provides, "If for any reason you feel you cannot discuss or resolve a concern with your Department Manager, you are encouraged to discuss the concerns with an appropriate level of confidentiality with Human Resources."

58.    In or about early December 2022, Plaintiff Cagle requested a meeting with Korzenko and Kailan, which he requested be held without Bolognese or Signore, in order to discuss the ongoing racial harassment and discrimination, which he had previously brought to the attention of both Bolognese and Signore without them taking any action to address his complaints. In an email to Korzenko, on December 2, 2022, Plaintiff Cagle specifically indicated that he wanted a meeting with Bolognese and Signore's supervisor because he felt that dealing with Bolognese and Signore was not productive as he had tried to address the situation with them multiple times over the previous 16 months with no action having been taken by them.

59.    On December 6, 2022, the requested meeting occurred, but despite Plaintiff Cagle's requests that Bolognese and Signore not be present so that he could freely discuss his complaints

regarding them, and despite the employee handbook promise of the ability to have confidential communication with Human Resources, Korzenko and Kailin surprised Plaintiff Cagle by having Bolognese and Signore attend.  Plaintiff Cagle objected to Bolognese's and Signore's attendance but was overruled by Kailin and Korzenko.

60.    During the meeting, rather than take his complaints regarding discrimination, disparate treatment, and harassment seriously, Korzenko became angry with Plaintiff Cagle and raised her voice at him and became hostile towards him.

61.    As a result of Korzenko's conduct, Plaintiff Cagle felt uncomfortable and wished to avoid escalation or further confrontation and attempted to leave the meeting.  However, Korzenko and Kailan claimed that he was being insubordinate, and threatened that if he left the meeting, he would be suspended. Nonetheless, Plaintiff felt deeply uncomfortable and targeted, and given the prevalence of the "angry black man" stereotype that Defendant had allowed to flourish within its facility, Cagle was afraid that if the situation escalated, that he would be further blamed, and discriminated against. Therefore, to avoid further escalation and confrontation, he left.

62.    Thereafter, Defendant followed through on its threat, and suspended Plaintiff Cagle without pay for one work week.

63.    On May 3, 2023, Plaintiffs Cagle filed a complaint against Defendant with the Connecticut Commission on Human Rights and Opportunities alleging racial discrimination, color discrimination and physical disability discrimination.  Defendant was served with the complaint on or before June 16, 2023.

64.    On May 15, 2023, Plaintiff Robinson filed a complaint against Defendant with the Connecticut Commission on Human Rights and Opportunities alleging racial discrimination and color discrimination.  Defendant was served with complaint on or about June 8, 2023.

65.    Following the December 2022 meeting and Plaintiff Cagle's complaints regarding racism, discrimination, and the failure of Defendant to respond to his complaints, Plaintiff Cagle has continued to be subjected to discrimination on the basis of his race and disability and has been denied reasonable accommodations in the workplace related to his disability.  This retaliation has taken the form of issuance of repeated written and verbal warnings for various alleged policy violations to Plaintiff Cagle for which other employees have not been similarly issued warnings.  Additionally, Plaintiffs supervisors have engaged in setting him up to fail.

66.    By way of example, Plaintiff Cagle is the only machine operator on his shift who does not have the assistance of a packer on his machine.  Plaintiff Cagle's supervisors, have insisted that he run his machine at a rate of 200 or higher. However, due to his visual deficiency, Plaintiff Cagle cannot safely and accurately run the machine at a rate of 200 or better without a packer.   Plaintiff Cagle has complained regarding this issue to his supervisors, including Signore and a new plant manager, known to Plaintiff Cagle as "Tony."   In particular, Plaintiff Cagle has indicated that he either needs a packer to assist in running the machine (like all other machine operators have to assist them), or he needs to be permitted to run the machine more slowly to run it alone.

67.    Defendant has not agreed to his request for accommodation.

68.    In February 2024, Plaintiff received a review wherein he was criticized specifically for the pace at which he runs his machine.

**COUNT ONE:      RACE DISCRIMINATION IN VIOLATION OF CONN. GEN. STAT. § 46a-60(b)(1) (TEVIN CAGLE V. NOVOLEX SHIELDS, LLC)**

69.     All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

70.     Defendant is an "employer" within the meaning of the Connecticut Fair Employment Practices Act.

71.     Defendant discriminated against Plaintiff Cagle in the terms and conditions of Plaintiff's employment on account of race.

72.     Defendant subjected Plaintiff Cagle to a pervasive and continuing course of discriminatory comments and conduct which had the purpose or effect of substantially interfering with Plaintiff's work performance and/or the creation of an intimidating, hostile, or offensive work environment.

73.     Defendant subjected Plaintiff Cagle to adverse employment action, motivated by Plaintiff's race.

74.     As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff Cagle has sustained lost or reduced wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**COUNT TWO:      RACE DISCRIMINATION IN VIOLATION OF CONN. GEN. STAT. § 46a-60(b)(1) (GERALD ROBINSON V. NOVOLEX SHEILDS, LLC)**

75.     All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

76.     Defendant is an "employer" within the meaning of the Connecticut Fair Employment Practices Act.

77.    Defendant discriminated against Plaintiff Robinson in the terms and conditions of Plaintiff's employment on account of race.

78.    Defendant subjected Plaintiff Robinson to a pervasive and continuing course of discriminatory comments and conduct which had the purpose or effect of substantially interfering with Plaintiff Robinson's work performance and/or the creation of an intimidating, hostile, or offensive work environment.

79.    Defendant subjected Plaintiff Robinson to adverse employment action, motivated by Plaintiff Robinson's race.

80.    As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff Robinson has sustained lost wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**COUNT THREE:    COLOR DISCRIMINATION IN VIOLATION OF CONN. GEN. STAT. § 46a-60(b)(1) (TEVIN CAGLE V. NOVALEX SHIELDS, LLC)**

81.    All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

82.    Defendant is an "employer" within the meaning of the Connecticut Fair Employment Practices Act.

83.    Defendant discriminated against Plaintiff Cagle in the terms and conditions of Plaintiff's employment on account of color.

84.    Defendant subjected Plaintiff Cagle to a pervasive and continuing course of discriminatory comments and conduct which had the purpose or effect of substantially interfering with Plaintiff's work performance and/or the creation of an intimidating, hostile, or offensive work environment.

85.     Defendant subjected Plaintiff Cagle to adverse employment action, motivated by Plaintiff's color.

86.     As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff Cagle has sustained lost or reduced wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**COUNT FOUR:     COLOR DISCRIMINATION IN VIOLATION OF CONN. GEN. STAT. § 46a-60(b)(1) (GERALD ROBINSON V. NOVOLEX SHIELDS, LLC)**

87.     All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

88.     Defendant is an "employer" within the meaning of the Connecticut Fair Employment Practices Act.

89.     Defendant discriminated against Plaintiff Robinson in the terms and conditions of Plaintiff's employment on account of color.

90.     Defendant subjected Plaintiff Robinson to a pervasive and continuing course of discriminatory comments and conduct which had the purpose or effect of substantially interfering with Plaintiff Robinson's work performance and/or the creation of an intimidating, hostile, or offensive work environment.

91.     Defendant subjected Plaintiff Robinson to adverse employment action, motivated by Plaintiff's color.

92.     As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff Robinson has sustained lost wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**COUNT FIVE:**      **RETALIATION IN VIOLATION OF CONN. GEN. STAT. § 46a-60(b)(4) (TEVIN CAGLE V. NOVALEZ SHIELDS, LLC)**

93.     All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

94.     Defendant is an "employer" within the meaning of the Connecticut Fair Employment Practices Act.

95.     Plaintiff Cagle engaged in protected activity by opposing Defendant's discriminatory employment practices.

96.     Defendant subjected Plaintiff Cagle to adverse employment action, motivated by Plaintiff having engaged in such protected activity.

97.     As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff Cagle has sustained lost or reduced wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**COUNT SIX:**      **RETALIATION IN VIOLATION OF CONN. GEN. STAT. § 46a-60(b)(4) (GERALD ROBINSON V. NOVOLEX SHIELDS, LLC)**

98.     All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

99.     Defendant is an "employer" within the meaning of the Connecticut Fair Employment Practices Act.

100.    Plaintiff Robinson engaged in protected activity by opposing Defendant's discriminatory employment practices.

101.    Defendant subjected Plaintiff Robinson to adverse employment action, motivated by Plaintiff Robinson having engaged in such protected activity.

102.    As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff Robinson has sustained lost wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**COUNT SEVEN:    DISABILITY DISCRIMINATION IN VIOLATION OF CONN. GEN. STAT. § 46a-60(b)(1) (TEVIN CAGLE V. NOVALEX SHIELDS, LLC)**

103.    All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

104.    Defendant is an "employer" within the meaning of the Connecticut Fair Employment Practices Act.

105.    Plaintiff Cagle is disabled within the meaning of the Connecticut Fair Employment Practices Act.

106.    Defendant discriminated against Plaintiff Cagle in the terms and conditions of Plaintiff's employment on account of his/her disability.

107.    Defendant failed to accommodate Plaintiff Cagle's disability, despite there being reasonable accommodations available which would not have constituted an undue hardship on Defendant.

108.    Defendant subjected Plaintiff Cagle to a pervasive and continuing course of discriminatory comments and conduct which had the purpose or effect of substantially interfering with Plaintiff's work performance and/or the creation of an intimidating, hostile, or offensive work environment.

109.    Defendant subjected Plaintiff Cagle to adverse employment action, motivated by Plaintiff's disability.

110.    As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff Cagle has sustained lost wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**PLAINTIFFS HEREBY DEMAND JURY TRIAL ON ALL ISSUES SO TRIABLE.**

**WHEREFORE, Plaintiffs prays for the following relief:**

1. Money damages;

2. Reinstatement, or in lieu thereof, front pay;

3. Punitive Damages;

4. Liquidated damages;

5. Attorneys' fees and costs of this Action; and

6. All other awardable relief.

PLAINTIFFS,
TEVIN CAGLE AND GERALD ROBINSON


BY:    /s/ Rebecca M. Harris
Rebecca M. Harris, Esq. (ct26669)
Harris Law, LLC
15 N. Main St., Suite 100
West Hartford, CT 06107
Tel. (860) 590-7167
rharris@harrislawct.com

TEVIN CAGLE & GERALD ROBINSON     CIVIL ACTION NO. 3:24-cv-00154 (JCH)
          Plaintiffs

   v.

DURO-HILEX POLY, LLC
         Defendant      March 28, 2025

## <u>STATEMENT OF AMOUNT IN DEMAND</u>

The amount in demand exceeds $15,000.00, excluding costs and interests.


             PLAINTIFFS,
             TEVIN CAGLE AND GERALD ROBINSON


        BY:   */s/ Rebecca M. Harris*
             Rebecca M. Harris, Esq. (ct26669)
             Harris Law, LLC
             15 N. Main St., Suite 100
             West Hartford, CT 06107
             Tel. (860) 590-7167
             rharris@harrislawct.com

**EXHIBIT 1**

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Tevin Cagle
**COMPLAINANT**

                                                    CHRO No. 2330533
vs.                                                 EEOC No.  16A202300936

Novolex Shields
**RESPONDENT**

RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint.  The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides.  If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served.  Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT.  § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

*Tanya A Hughes*

**DATE:**        November 3, 2023        Tanya A. Hughes, Executive Director

Service:
Complainant: tevincagle07@gmail.com
Complainant's attorney:  rharris@cicchielloesq.com
Respondent:  Novolex Shields LLC
Respondent's attorney: jfritz@fisherphillips.com

.

**EXHIBIT 2**

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Gerald Robinson
**COMPLAINANT**

vs.

CHRO No.  2330548
EEOC No.  16A202300948

Novolex Shields LLC
**RESPONDENT**

<u>RELEASE OF JURISDICTION</u>

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint.  The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides.  If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served.  Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT.  § 46a-103.**

<u>The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.</u>

_Tanya A. Hughes_
_____

**DATE:**   November 3, 2023          Tanya A. Hughes, Executive Director

Service:
Complainant: mrgeraldrobinson91@gmail.com
Complainant's attorney:  rharris@cicchielloesq.com
Respondent:  Novolex Shields LLC
Respondent's attorney: jfritz@fisherphillips.com