UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TEVIN CAGLE & GERALD ROBINSON | : | CIVIL ACTION NO. 3:24-cv-00154 (JCH) |
| | : | |
| Plaintiffs | : | |
| v. | : | |
| | : | |
| DURO-HILEX POLY, LLC | : | |
| | : | |
| Defendant | : | MAY 30, 2025 |

**REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' Objection ("Objection") to Defendant Duro-Hilex Poly, LLC's ("DHP") Motion for Summary Judgment is devoid of any citation to the evidentiary record and wholly ignores, among other things, their dispositive admissions that they do not believe DHP based any adverse action on their race/color and/or Cagle's alleged disability.  Even apart from these fatal admissions, Plaintiffs' Objection fails to proffer any admissible evidence to support their claim that DHP took any adverse action based on their race/color, alleged protected activity, and/or Cagle's disability (and/or failed to accommodate the latter).  Moreover, Plaintiffs' Objection is devoid of any admissible evidence sufficient to support a hostile work environment claim; that certain coworkers allegedly referred to Plaintiffs, on a few occasions, as "angry black men," which is all Plaintiffs have here, is not sufficient.  Accordingly, and as explained more fully below and in DHP's supporting memorandum (Doc. No. 51), the Court should grant DHP's motion for summary judgment in its entirety.

> A.  **The Court Should Grant Summary Judgment on Plaintiffs' Race/Color Discrimination Claims (Counts One through Four).**
>
> 1.  **Disparate Treatment**

As to their disparate treatment race/color discrimination claim, Plaintiffs' Objection

essentially (1) cites the relevant laws, (2) outlines the relevant standard, and (3) restates the allegations in their Complaint, with no citation whatsoever to the evidentiary record. (See Doc. No. 55, Obj. at 1-4.) Plaintiffs completely ignore the fact that each testified he does not believe DHP based either of the adverse employment actions at issue (*i.e.*, Robinson's August 2022 termination and Cagle's December 2022 one-week suspension) on their race/color. (See Doc. No. 51, Mem. at 29-30 (citing Mem. Ex. 2, Cagle Dep. at 251-52 & 255; Mem. Ex. 3, Robinson Dep. at 206).) They cannot defeat summary judgment by ignoring these dispositive admissions and would be hard-pressed to ask a jury to disagree with them and find in their favor.

Apart from these fatal admissions, Plaintiffs' Objection fails to proffer any admissible evidence tying the adverse actions at issue to their race and/or color.[1] Indeed, Plaintiffs allege no racial comments by any of the decisionmakers at issue. All they allege is certain coworkers not involved in the decision-making process allegedly referred to them, on a few occasions, as "angry black men." Such comments have no nexus whatsoever to the decisions at issue and, accordingly, are insufficient to create an issue of fact for trial. See Holman v. City of New London, No. 3:23-cv-00631 (MPS), 2025 WL 904469, at *6 n.4 (D. Conn. Mar. 25, 2025) (stray remarks by non-decisionmakers unrelated to decisional process insufficient to defeat summary judgment) (citation omitted).[2]

---

[1] Their claim that "[t]he majority of few [sic] other black employees who were employed by Defendant during that time left the company because of similar mistreatment and discrimination" (see Doc. No. 55, Opp. at 2), for example, is (1) devoid of any evidentiary support, based entirely on hearsay and/or speculation (see Doc. No. 55-1, L.R. 56(a)2 Statement at 26 (Additional Fact No. 5) (citing Mem. Ex. 7, Pls.' Resp. to Interrog. No. 6); see also Reply Ex. 1, Cagle Dep. at 256-62) and, in any event, (2) totally irrelevant.

[2] See also Kottapalli v. ASML US, LP, No. 3:21-CV-01076 (VDO), 2024 WL 3811725, at *6 (D. Conn. Aug. 14, 2024) ("the Second Circuit has long held that '[s]tray remarks, even if made by a decision maker, do not constitute sufficient evidence to make out a case of employment discrimination'") (citing Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998)).

Finally, Plaintiffs' reference to and/or reliance on DHP's Open Door Policy and Progressive Discipline policy is of no moment and nothing more than a red herring. The Open Door Policy simply states:

> To ensure that every employee has an opportunity to be heard, open communication is available to all employees on a uniform and impartial basis. Employees are encouraged to share their concerns, seek information, provide input, and resolve problems/issues through their immediate management without fear of retaliation, and as appropriate, consult with any member of management towards those ends. Managers are expected to listen to employee concerns, to encourage their input, and to seek resolution.
>
> If for any reason you feel you cannot discuss or resolve a concern with your Department Manager, you are encouraged to discuss the concerns with an appropriate level of confidentiality with Human Resources. This Open-Door Policy is intended to provide effective communication within the Company but is not intended as a contractual right to any due process.

(See Mem. Ex. 4, Handbook § 3.3.) Nothing in this policy says an employee can dictate how DHP tries to resolve an employee's complaint and/or precludes DHP from inviting an his managers to a meeting to try to work through the issues raised. (See Doc. No. 52, Loc. R. 56(a)1 Statement ¶ 99 (Korzenko invited Bolognese and Signore to the meeting so they could all work through the issues Cagle raised).) In short, that DHP encourages employees to raise concerns to whomever they want in management and/or Human Resources says <u>nothing</u> about whether management and/or Human Resources can (or cannot) invite other managers to subsequent meetings with the intention of trying to work through their issues—and it says <u>even less</u> about whether race/color bias motivated the decision to suspend Cagle's employment for insubordination after he stormed out of the meeting after being warned his doing so would constitute insubordination. Moreover, DHP's Progressive Discipline policy simply states:

> The primary purpose of any disciplinary action is to correct the problem, prevent recurrence, and prepare the employee for satisfactory service in the future. Disciplinary action may call for any of four steps – verbal warning, written warning, final written warning/suspension, or termination of employment – depending on the nature and severity of the problem and/or the employee's history of prior discipline.

- 3 -

> By using progressive discipline when appropriate, the Company hopes that most employee problems can be corrected at an early stage, benefiting both the employee and the Company.

(See Reply Ex. 2, Handbook § 3.11.)[3]  Relatedly, DHP's Rules of Conduct and Business Ethics policy makes clear it reserves the right to "subject employees to discipline, up to and including termination, within its discretion" and "skip any stage of the progressive discipline process based on the nature and severity of the infraction."[4]  (See id. § 3.12.)  It also provides, among others, the following examples of conduct that "may result in disciplinary action, up to and including termination of employment:"  (1) "[i]nsubordination," and (2) "[e]xcessive absenteeism or any absence without notice."  (See id.)  Whether Plaintiffs believe their misconduct amounts to "relatively minor violations" warranting lesser discipline is immaterial.  What matters is what motivated the decisionmakers.  See Saliga v Chemtura Corp., No. 12-cv-832 (VAB), 2015 WL 5822589, at *10 (D. Conn. Oct. 1, 2015) (citing Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991)).[5]

---

[3] While Plaintiffs purport to rely on this policy, they failed to include it in the summary judgment record.  DHP attaches it hereto.

[4] See Bramble v. Moody's Corp., No. 23-506, 2024 WL 705955, at *3 (2d Cir. Feb. 21, 2024) (affirming summary judgment and rejecting similar argument: failure to consider lesser discipline "is of no moment given that the company's code of conduct makes clear (and Bramble herself recognizes) that Moody's was not obligated to undertake any form of progressive discipline or retraining in advance of a termination decision"); Lee v. Grocery Haulers, Inc., No. 22-680, 2023 WL 8253089, at *2 n.3 (2d Cir. Nov. 29, 2023) (affirming summary judgment and explaining: "We are likewise unconvinced by Lee's argument that GHI's failure to impose 'progressive discipline' displays discriminatory animus, particularly because Lee offers no evidence that GHI's failure was race-related in any way").

[5] Plaintiffs have no evidence showing discrimination or retaliation motivated any of DHP's decisions, and it is not the Court's role to second-guess DHP's legitimate business decisions in the absence of evidence of discrimination or retaliation.  See Bentley v. AutoZoners, LLC, 935 F.3d 76, 89 (2d Cir. 2019) (affirming summary judgment, explaining plaintiff "cannot urge pretext simply by questioning whether her misconduct was sufficiently severe to warrant termination") (citing Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002) ("The court's role is to prevent unlawful hiring practices, not to act as a superpersonnel department that second guesses

In sum, Plaintiffs proffer no admissible evidence whatsoever to create a genuine issue of material fact as to whether (1) the adverse actions at issue occurred under circumstances giving rise to an inference of race/color discrimination, and/or (2) DHP's legitimate, nondiscriminatory reasons for such actions were (a) false, and (b) merely designed to mask discriminatory animus. (See Doc. No. 51, Mem. §§ IV.A.1 & 2.) Accordingly, the Court should grant summary judgment in DHP's favor on these claims.

### 2. Hostile Work Environment

As DHP explains in its supporting memorandum, Plaintiffs' hostile work environment claims fail, in the first instance, because they are untimely. (See Doc. No. 51, Mem. at 33.) Indeed, neither Plaintiff specifically alleges any allegedly harassing conduct based on race/color occurring on or after (1) July 9, 2022, for Cagle, and/or (2) July 19, 2022 (just a couple of weeks before his employment was terminated), for Robinson. (See id.)

Robinson purports to rely on the fact that his employment was terminated within 300 days of his CHRO charge. (See Doc. No. 55, Obj. at 5.) But the continuing violation doctrine "applies not to discrete unlawful acts, even where those discrete acts are part of 'serial violations,' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." Olaya v. Beacon Cmtys. Corp., No. 3:22-cv-882 (VDO), 2024 WL 550738, at *6 (D. Conn. Feb. 12, 2024) (citing Lucente v. Cnty. of Suffolk, 980 F.3d 284, 309 (2d Cir. 2020)).[6] Robinson's termination is a "discrete act," considered on a disparate treatment theory

---

employers' business judgments"); Byrnie v. Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) ("courts must be careful not to second-guess an employer's business judgment" in firing employee; singular inquiry is whether termination was discriminatory).

[6] See also V.W. v. Yale Univ., No. 3:22-cv-01156 (KAD), 2024 WL 4349032, at *5 (D. Conn. Sept. 30, 2024) (citing Ramlal-Nankoe v. Ithaca Coll., 591 F. App'x 23, 25 (2d Cir. 2015)) (internal quotations omitted) (continuing violation doctrine "is inapplicable to [d]iscrete acts such as termination [and] failure to promote, which are easy to identify.") (internal quotations omitted).

(see supra § A.1) and, by its nature, is not part of his hostile work environment claim. Where Robinson fails to allege any harassing conduct based on his race/color on or after July 19, 2022, his hostile work environment claim is time-barred.

The same is true as to Cagle. His suspension is a discrete act and, accordingly, not part of his hostile work environment claim. Cagle attempts in vain to get around the statute of limitations issue here by referring to his non-specific testimony at the conclusion of his deposition:

> Q. When was the last time anybody called you an angry black man at DHP?
> A. I would say sometime in 2022. I don't recall specifically when.
> Q. Best of your recollection, when in 2022?
> A. I want to say the end of 2022, so around anywhere from the beginning of November to the end of December.
> Q. And who was the last person that called you an angry black man?
> A. To my knowledge it was a female, so I want to say Jaymatti.
> Q. And what was the context of that time?
> A. Don't recall.

(See Reply Ex. 1, Cagle Dep. at 286-87.) "To show a discriminatory policy or practice, there must be evidence that specific 'instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Collins v. Fed. Express Corp., 731 F. Supp. 3d 368, 378 (D. Conn. 2024) (citing Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994)). Cagle's answer here is that he does not specifically recall the last time someone referred to him as an "angry black man;" the rest clearly is just a guess on his part. Where Cagle fails specifically to allege any harassing conduct occurring within 300 days of his CHRO charge, his hostile work environment claim, like Robinson's, is time-barred.

Even assuming such claims were timely, however, Plaintiffs' allegations are insufficient to satisfy the "high bar to make out a hostile work environment claim." See Tyson-Phipps v. Rubio, No. 23 Civ. 2316 (LAK)(GWG), 2025 WL 1189420, at *12 (S.D.N.Y. Apr. 24, 2025) (granting

motion to dismiss where isolated or episodic stray remarks not "sufficiently continuous and concerted in order to be deemed pervasive") (citations omitted).  Stripped of their baseless conspiracy theories of "sabotage" and inadmissible conclusory allegations about matters having nothing whatsoever to do with race and/or color, all Plaintiffs allege in support of this claim is that <u>seven Indian coworkers (not managers), on thirteen (largely non-specific) occasions over the course of a year</u>, referred to them as "angry black men."[7]  (See Doc. No. 51, Mem. § I.F; Doc. No. 55, Obj. at 7.)  A far cry from Plaintiffs themselves using the n-word to refer to coworkers (see Doc. No. 51, Mem. § I.L), such comments, while admittedly inappropriate, amount to "mere offensive utterances" and "sporadic offensive slurs" that are insufficient to create a genuine issue of fact for trial (see id. at 34 & n.50 (collecting cases)).  The Court, therefore, should grant summary judgment in DHP's favor on these claims.

### B. The Court Should Grant Summary Judgment on Plaintiffs' Retaliation Claims (Counts Five and Six).

In support of their retaliation claims, Plaintiffs rely almost exclusively on the temporal proximity between their most recent complaint about what they call "racial tension" and the adverse action at issue.  (See Doc. No. 55, Obj. at 8-9.)  More specifically, Cagle alleges he complained about "racial tension" during the December 6, 2022 meeting he stormed out of after being told if he did, it would be considered insubordination.  (See Doc. No. 51, Mem. § IV.B.1; Doc. No. 55, Obj. at 9.)  And Robinson focuses on his alleged complaint of "racial tension" during

---

[7] Plaintiffs' testimony is entirely muddled and inconsistent on this issue.  For example, on the one hand, they claim that "J" was the first coworker to use the phrase "angry black man" in April 2022, after Robinson's altercation with Kalpesh (see Doc. No. 51, Mem. at 14; see also Reply Ex. 1, Cagle Dep. at 160) and, on the other hand, attribute the comment to other coworkers going back to January 2022 (see, e.g., Doc. No. 55-1, L.R. 56(a)2 Statement ¶¶ 39, 41-43).  They throw the phrase around like confetti, largely devoid of any real specifics as to time and context.  To be clear, DHP denies either Plaintiff ever complained to management or HR that any coworker referred to them as "angry black men" but, for purposes of this motion only, assumes they did.

the week of July 25, about a week before his employment was terminated for repeated violation of DHP's attendance policy. (See Doc. No. 51, Mem. § IV.B.1; Doc. No. 55, Obj. at 9.) In light of these temporal proximities (coincidences outside of DHP's control), DHP did not base its motion on Plaintiffs' inability to create an issue of fact as to whether they can establish a *prima facie* case.

But the larger picture here completely undercuts any inference that DHP took the adverse actions at issue based on such alleged protected activity. As a preliminary matter, both Plaintiffs allege they "made multiple complaints regarding the hostile racial environment" over the better part of a year. (See Doc. No. 55, Obj. at 9; see also Doc. No. 51, Mem. at 5-25.) Such "elongated timeline confounds any 'chronological proximity' between the protected conduct and the adverse action that could give rise to an inference of causation." See Morales v. Fed. Express Corp., 610 F. Supp. 3d 317, 327-28 (D. Mass. 2022) (no "causal nexus" where plaintiff alleges "over the course [of] his extensive employment at FedEx, he consistently complained about [his supervisor's] alleged discrimination"). And even assuming that was not the case, at the pretext step, Plaintiffs "cannot rely merely on the coincidence of timing." See Wynn v. New Haven Bd. of Ed., No. 3:21-cv-925 (SVN), 2024 WL 1157148, at *12 (D. Conn. Mar. 18, 2024) (citing Fu v. Consol. Edison Co. of N.Y., 855 F. App'x 787, 791 (2d Cir. 2021) (summary order) ("unlike at the prima facie stage, [plaintiff] cannot rely on the inferences of timing alone' at step three"). Finally, while Plaintiffs may disagree with DHP's decision-making as to the adverse actions at issue, and/or offer excuses for their misconduct—which is essentially all they did at their depositions and all they do in their Objection—they do not, and cannot, dispute:

- during the December 6 meeting, (a) Cagle got up, threatened to leave, (b) Kailan told him that, if he left the meeting, it would constitute insubordination, and (c) notwithstanding Kailan's warning, Cagle left the meeting (see Doc. No. 51, Mem. § I.O); and/or

- Robinson (a) received a final written warning for his deficient attendance in early July 2022, and (b) subsequently was absent on July 25 and 26 and August 1 and 2 (see id. §§

I.G & J).

(See id. at 36.)  And they have no admissible evidence whatsoever showing such reasons for the adverse actions at issue (*i.e.*, Robinson's termination in early August 2022 and Cagle one-week suspension in early December 2022) were false and/or the real reason was retaliation. Accordingly, the Court should grant summary judgment on these claims.

### C. **The Court Should Grant Summary Judgment on Cagle's Disability Discrimination Claim (Count Seven).**

Cagle appears to have abandoned his disparate treatment and hostile work environment disability discrimination claims, at least as it relates to those claims properly before the Court. (See Doc. No. 55, Obj. at 9-10.)  Even assuming he did not, they clearly are baseless.  Indeed, Cagle specifically testified <u>he does not believe DHP took any adverse action against him based on his alleged disability</u> (see Doc. No. 51, Mem. Ex. 2, Cagle Dep. at 270), no admissible evidence exists to support such a claim (indeed, Cagle testified he disclosed his alleged disability upon hire, and he was subsequently promoted (see id. Mem. at 3-4 & n.3), which totally undercuts any such inference), and no admissible evidence exists to support a hostile work environment theory based on Cagle's disability.

Moreover, Plaintiffs' Objection confirms his "failure to accommodate" claim boils down to his gripes about the fact that his Indian coworker-trainers spoke in broken English, used hand gestures and demonstrations to train him, and did not slow down the machine to his liking.  (See Doc. No. 55, Obj. at 9-10.)  Cagle fails to address in any meaningful way DHP's argument that his failure to accommodate claim as to such training is untimely (because it clearly is) and, even assuming it was timely, it cannot reasonably support a "failure to accommodate" theory, as DHP never denied any request for accommodation.  (See Doc. No. 51, Mem. at 38-40.)

Plaintiffs' Objection also indicates Cagle complained about not having "the assistance of

a packer" "shortly before his deposition, which occurred in November 2024." (See Doc. No. 55, Obj. at 10.) Cagle does not allege he requested "the assistance of a packer" as an accommodation for his eye issue, nor does the fact that he had to operate his machine without "the assistance of a packer" constitute a "failure to accommodate." Moreover, such failure is a "discrete act" that allegedly occurred over two-and-a-half years after Cagle filed his CHRO charge, over a year after the CHRO dismissed his charge, and one that only surfaced, for the first time, after the close of discovery in Plaintiffs' March 28, 2025 Amended Complaint. (See Doc. No. 51, Mem. at 38 & n.55.) Accordingly, even assuming such claim has any merit (it does not), it is not properly before the Court and the Court should not consider it.

*   *   *   *   *   *

For any and all of the foregoing reasons, and those set forth in DHP's supporting memorandum of law (Doc. No. 51), the Court should grant DHP's motion in its entirely and enter summary judgment in its favor on all counts.

      DEFENDANT
      DURO-HILEX POLY, LLC

      By its attorneys,

      /s/ Jeffrey A. Fritz
      Jeffrey A. Fritz, ct26667
      Monica Snyder Perl (admitted pro hac vice)
      FISHER & PHILLIPS LLP
      200 State Street, 13th Floor
      Boston, Massachusetts 02109
      (617) 722-0044
      jfritz@fisherphillips.com
      mperl@fisherphillips.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                                     */s/ Jeffrey A. Fritz*
                                                                     Jeffrey A. Fritz